<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MALCOLM C. DONLEY, <br><br> Defendant. | Case No. 3:88-cr-00066 (BRM) <br><br> **AMENDED OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Defendant Malcom C. Donley's ("Donley") Motion for Compassionate Release under the First Step Act, 18 U.S.C. § 3582(c)(1)(A), the Coronavirus Aid, Relief, and Economic Security Act of 2020, and BOP Program Statement 5050.47 (the "Motion"). (ECF No. 2.) Plaintiff, the United States of America (the "Government"), opposed Donley's Motion. (ECF No. 5.) Donley replied in support of his Motion. (ECF No. 6.) Donley filed a supplemental brief to his Motion. (ECF No. 10.) The Government submitted a supplemental opposition letter brief in response to Donley's supplemental brief. (ECF No. 11.) Donley filed a supplemental reply letter brief. (ECF No. 12.) Having reviewed the parties' submissions filed in connection with the Motion and having heard oral argument on October 5, 2021 (ECF No. 14), for the reasons set forth below and for good cause having been shown, Donley's Motion is **DENIED**.

**I.    BACKGROUND**

In 1988, Donley was charged and convicted after a jury trial of first-degree murder for the murder of his wife at the McGuire Air Force Base. (Docket Sheet (ECF No. 1).) The Court imposed a sentence of life imprisonment, and the Third Circuit affirmed both the conviction and the

sentence. *United States v. Donley*, 878 F.2d 735, 741 (3d Cir. 1989). Donley is presently serving his sentence at FCI Pekin, in Pekin, Illinois. (ECF No. 5 at 2.) Although the Federal Bureau of Prisons ("BOP") considers him to have a minimum risk of recidivism, BOP has designated him as requiring a medium security place of confinement. (*Id.*) Donley's disciplinary record shows 12 infractions during his time in custody, including a 2004 incident in which he admitted ownership of a dangerous weapon. (*Id.*, Exhibit B.) Donley has taken several educational classes and earned his GED while in custody. (ECF No. 2 at 2–3; ECF No. 5 at 2, Exhibit C.)

At the time of his Motion, Donley was 63 years old. (ECF No. 2 at 3.) His medical records report an assessment of hypertension (high blood pressure) and hyperlipidemia (high cholesterol) and prescriptions for atorvastatin, hydrochlorothiazide, and lisinopril. (ECF No. 5 at 2, Exhibit D at 5–6.) On December 4, 2020, Donley tested positive for COVID-19. *Id.* at 7. He was put in isolation until January 6, 2021, when he was transferred to an emergency room for two nights following complaints of shortness of breath and signs of respiratory distress. *Id.* He was thereafter returned to custody at FCI Pekin. Donley received two doses of the Moderna COVID-19 vaccine in April and May 2021. (ECF No. 11 at 1, Exhibit G at 43.)

Donley filed this Motion, *pro se*, on November 1, 2020. (ECF No. 2.) On March 1, 2021, the Government opposed Donley's Motion. (ECF No. 5.) Donley replied to the Government's opposition to his Motion on March 29, 2021. (ECF No. 6.) Donley was appointed counsel on April 5, 2021 (ECF No. 7), and, on July 12, 2021, Donley (through counsel) filed a supplement to his Motion (ECF No. 10). On August 12, 2021, the Government filed a supplemental opposition. (ECF No. 11.) On September 7, 2021, Donley filed a supplemental reply. (ECF No. 12.) The Court heard oral argument on October 5, 2021. (ECF No. 14.)

## II. LEGAL STANDARD

A district court may modify a sentence of imprisonment only in "limited circumstances." *See Dillon v. United States*, 560 U.S. 817, 824 (2010). One such circumstance is a compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). The statute, as amended by the First Step Act of 2018, allows a motion for such relief to be brought by either the Director of the BOP or by the defendant himself after the defendant has exhausted his or her administrative remedies. 18 U.S.C. § 3582(c)(1)(A)(i); *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020). A court may reduce the defendant's sentence if the Court finds the following: (1) there are "extraordinary and compelling reasons" which warrant a reduction; (2) the reduction would be "consistent with applicable policy statements issued by the Sentencing Commission"; and (3) the applicable sentencing factors under 18 U.S.C. § 3553(a) indicate reducing the defendant's sentence would be appropriate. 18 U.S.C. § 3582(c).

"[T]he statute itself does not define the key terms 'extraordinary and compelling,' apparently providing courts with some flexibility and discretion to consider the unique circumstances of a motion for compassionate release." *United States v. Batista*, No. 18-415, 2020 U.S. Dist. LEXIS 139068, at *4 (D.N.J. Aug. 5, 2020) (citing *United States v. Rodriguez*, 451 F. Supp. 3d 392, 397 (E.D. Pa. 2020)). The Sentencing Commission has defined the term "under the previous version of § 3582(c)(1)(A)," but it has not "updated its Policy Statement since the passage of the First Step Act." *United States v. Alexander*, No. 19-32, 2020 U.S. Dist. LEXIS 85609, at *6 (D.N.J. May 15, 2020) (citing *Rodriguez*, 451 F. Supp. 3d at 397). Nevertheless, "the present Policy Statement provides useful guidance for district courts in identifying extraordinary and compelling reasons for a defendant's eligibility for compassionate release." *United States v.*

*Gwaltney*, No. 17-00381, 2020 U.S. Dist. LEXIS 186893, at *4–5 (D.N.J. Oct. 8, 2020) (citations omitted).

"The Sentencing Commission's Policy Statement provides that a defendant may demonstrate extraordinary and compelling reasons for compassionate release based on: (1) the medical condition of the defendant; (2) the age of the defendant; (3) the defendant's family circumstances; or (4) for 'other reasons.'" *Id.*, at *5 (citing U.S. SENTENCING GUIDELINES MANUAL ("U.S.S.G.") § 1B1.13 cmt. n.1 (U.S. Sent'g Comm'n 2018)). The defendant's "[m]edical [c]ondition," constitutes an extraordinary and compelling reason when:

> (i) The defendant is suffering from a terminal illness . . . ; [or]
> (ii) The defendant is—
>
>> (I) suffering from a serious physical or medical condition,
>> (II) suffering from a serious functional or cognitive impairment, or
>> (III) experiencing deteriorating physical or mental health because of the aging process,
>
>> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1(A). A court may grant compassionate release or a sentence reduction consistent with the Sentencing Commission's Policy Statement after the court determines: "(i) extraordinary and compelling reasons warrant a reduction in a defendant's sentence; (ii) the defendant is not a danger to the safety of others or to the community; and (iii) release from custody complies with the section 3553(a) factors, to the extent applicable." *United States v. Williams*, No. 17-0379, 2021 U.S. Dist. LEXIS 1261, at *3 (D.N.J. Jan. 4, 2021) (citing U.S.S.G. § 1B1.13).

### III. DECISION

As a threshold matter, the parties agreed at oral argument Donley satisfied the statutory

exhaustion requirement.[1] The Court, then, turns to the substance of the Motion.

### A. Extraordinary and Compelling Reasons

There are two components to the "extraordinary and compelling reasons" inquiry: "(a) identification of a medical condition that renders the defendant particularly vulnerable to serious consequences if infected with COVID-19; and (b) the likelihood of COVID-19 infection, with particular reference to conditions in the institution in which the defendant is incarcerated." *United States v. Moore*, No. 19-101, 2020 U.S. Dist. LEXIS 132220, at *7 (D.N.J. July 27, 2020). The following analysis will focus on the two components.

#### 1. Donley's Medical Conditions Alone Do Not Constitute Extraordinary and Compelling Reasons

Donley claims to suffer from three conditions the Centers for Disease Control and Prevention ("CDC") lists as increasing the risk of serious illness from COVID-19: (1) he is over 60 years of age; (2) he suffers from high blood pressure; and (3) he suffers from chronic high cholesterol. (ECF No. 2 at 4; ECF No. 6 at 2–3.) Donley's reply in further support of his Motion notes the United States Department of Justice ("DOJ") released a directive to prosecutors in May 2020 stating they should concede inmates with certain CDC risk factors, including hypertension, had in fact presented "extraordinary and compelling reasons" supporting a request for compassionate release. (ECF No. 6 at 4.) In his supplemental reply brief, Donley submits his age, high blood pressure, and high cholesterol "with his lungs potentially compromised by his first bout with COVID-19, are 'extraordinary and compelling reasons' for compassionate release[.]" (ECF No. 10 at 3–4.)

---

[1] Section 3582(c)(1)(A) provides a court entertain a motion for compassionate release only "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility[.]" *See United States v. Epstein*, No. 14-287, 2020 U.S. Dist. LEXIS 62833 (D.N.J. Apr. 9, 2020).

The Government argues Donley's conditions do not place him at heightened risk from COVID-19. (ECF No. 5 at 6 (citing https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (visited Feb. 25, 2021)).) The Government also argues Donley contracted COVID-19 and recovered, which is further proof compassionate release is not warranted. (*Id.*) The Government additionally claims Donley's transfer to a hospital demonstrates Donley receives adequate medical care in the BOP environment such that there is no cause to release him. (*Id.* at 7.) Donley opposes these arguments by claiming he is still experiencing post-COVID symptoms such as severe fatigue, shortness of breath, pounding heart, body soreness, headaches, and brain fog. (ECF No. 6 at 16.) He argues he is at risk for reinfection, and should he be reinfected in this weakened condition, death is a very real possibility. (*Id.*)

Donley and the Government filed supplemental briefing after Donley received two doses of the Moderna vaccine. In its supplemental opposition, the Government argues Donley is considered fully vaccinated against COVID-19 which "means that Donley cannot show 'extraordinary and compelling reason'" for release. (ECF No. 11 at 1.) Donley does not dispute he received two doses of the vaccine, but he claims he may still be reinfected and his conditions "combine to put him in a category *much* more likely to get severely ill or even die if he contracts COVID-19 again[.]" (ECF No. 12 at 1.)

Regarding Donley's vaccination status, "the Court takes caution to neither punish nor incentiv[ize] this Defendant or others with respect to their acceptance or refusal to receive the COVID-19 vaccine and will view this issue standing alone as a neutral factor." *United States v. Casado*, No. 17-409, 2021 U.S. Dist. LEXIS 141712, at *6 (D.N.J. July 28, 2021). "While the Court is encouraged by Defendant's vaccination status in light of well-established and accepted evidence that the available vaccines are both safe and effective, undue weight will not be given,

positively or negatively, to Defendant's decision." *Id.* Nonetheless, the Court finds Donley does not, on the record as a whole, present "extraordinary and compelling" reasons supporting his release.

First, neither Donley's hypertension nor hyperlipidemia is a "terminal illness" under the Sentencing Commission's Policy Statement. U.S.S.G. § 1B1.13 cmt. n.1(A)(i).[2] A "terminal illness" that constitutes an extraordinary and compelling reason means "a serious and advanced illness with an end of life trajectory," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia." *Id.* Here, Donley has not made such a showing.

Second, Donley's conditions do not "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." *Id.* § 1B1.13 cmt. n.1(A)(ii). In "determining whether extraordinary and compelling reasons exist in COVID-19 compassionate release cases," courts generally defer to the CDC's list of underlying medical conditions that place "people at increased risk of severe illness from COVID-19." *United States v. Henderson*, No. 15-0329, 2020 U.S. Dist. LEXIS 156060, at *8–9 (D.N.J. Aug. 26, 2020). Courts in this District recognize the CDC's distinction between the "groups of individuals who *are* at increased risk of severe illness from COVID-19 and other groups who *might* be at an increased risk of increased illness from COVID-19" in the "extraordinary and compelling reasons" inquiry. *United States v. Johnson*, No. 19-0787, 2021 U.S. Dist. LEXIS 9824, at *6–7, n.6 (D.N.J. Jan. 19, 2021) (quotation marks omitted) (citing *People With Certain Medical*

---

[2] The Sentencing Commission's Policy Statement found in application note 1(A)(ii) to U.S.S.G. § 1B1.13, while not binding on this Court, may be considered by the Court in its "extraordinary and compelling" analysis. *United States v. Jefferson*, No. 21-2020, 2021 U.S. App. LEXIS 28572, at *6 (3d Cir. Sep. 21, 2021) (citing *United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021)).

7

*Conditions*, CDC, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (visited Jan. 18, 2021)). "The medical conditions that merely 'might' place individuals at an increased risk generally do not support finding extraordinary and compelling reasons." *United States v. Mell,* No. 18-00757, 2021 U.S. Dist. LEXIS 33235, at *10 (D.N.J. Feb. 9, 2021) (citations omitted).

Neither hypertension nor hyperlipidemia are conditions that generally support finding extraordinary and compelling reasons for compassionate release. *See, e.g.*, *United States v. Vizcaino*, No. 16-0090, 2021 U.S. Dist. LEXIS 32651, at *9 (D.N.J. Feb. 22, 2021) (finding the defendant did not "meet the extraordinary and compelling reasons inquiry" because his asthma and hypertension "would not place him on the CDC's 'are at risk,' list but they do place him on the CDC's list of persons who 'might be' at risk of severe illness from the COVID-19 virus," and his "other cited medical conditions--hyperlipidemia and prediabetes--do not appear on either list"); *United States v. Scalea*, No. 18-00620, 2021 U.S. Dist. LEXIS 21257, at *4–5 (D.N.J. Feb. 4, 2021) (denying compassionate release to an inmate with asthma and hypertension because he did "not fall within the class of people most vulnerable to the virus"); *United States v. Gideon*, No. 13-0429, 2020 U.S. Dist. LEXIS 235208, at *6 (D.N.J. Dec. 14, 2020) (denying compassionate release to an inmate because "general high blood pressure does not constitute a high-risk category").

In addition, courts also consult the CDC guidance with respect to a defendant's age-related claims. *See, e.g.*, *United States v. Toney*, No. 83-00017, 2021 U.S. Dist. LEXIS 70615, at *5–6 (D.N.J. Apr. 12, 2021) (considering CDC guidance on age-related COVID-19 risks in denying defendant's motion for compassionate release). While "older adults"—defined as "65 years and

older"—are at an increased risk of contracting COVID-19,[3] the mere fact a defendant is at a higher risk of contracting COVID-19 due to his age does not alone warrant compassionate release. *See id.*, at *7 (denying compassionate release to 66-year-old inmate, who had already contracted and recovered from COVID-19, after finding he would be "no more vulnerable to COVID-19 inside [prison] than he is if released").

The DOJ's internal guidance regarding compassionate release does not change the analysis. As Donley notes in his Motion, "on May 18, 2020, the DOJ issued internal guidance which directs that the Government concede that Defendants who have certain CDC risk factors can establish that 'extraordinary and compelling reasons' warrant the reduction in sentence[.]" *United States v. Beard*, No. 16-285, 2020 U.S. Dist. LEXIS 246841, at *6 (N.D. Ga. June 25, 2020). However, the Court does not discern, and Donley does not present, any legal authority holding the DOJ guidance binds this Court. To the contrary, "the Court is loath to make assumptions about the Government's position in any particular case," including those based on the DOJ's "apparently nationwide policy" that lists medical conditions constituting extraordinary and compelling reasons, *United States v. Edwards*, No. 13-00012, 2020 U.S. Dist. LEXIS 127869, at *20 (M.D. Tenn. June 2, 2020), and "it is not bound by the DOJ's interpretation of §1B1.13 cmt. (1)(A)." *United States v. White*, No. 09-369, 2020 U.S. Dist. LEXIS 122576, at *6 (D. Md. July 10, 2020); *see also United States v. Black*, No. 20-4185, 2021 U.S. App. LEXIS 5983, at *5 (6th Cir. Mar. 1, 2021) (holding a district court may deny relief under the § 3553(a) factors even if a DOJ directive requires the government

---

[3] The CDC guidance notes the risk of COVID-19 related hospitalization for older adults who received both doses of either Pfizer or Moderna vaccines is reduced by 94%. *COVID-19 Risks and Vaccine Information for Older Adults*, https://www.cdc.gov/aging/covid19/covid19-older-adults.html (last visited Nov. 10, 2021).

9

to concede a defendant's health conditions constitutes an "extraordinary and compelling" reason making him eligible for compassionate release).

Moreover:

> On July 28, 2020, the DOJ issued additional guidance on two different types of COVID-19 risk factors recognized by the CDC: (1) those that *definitively* entail a greater risk of severe illness; and (2) those that *might* increase the risk of severe illness, and directed the Government to concede that a chronic medical condition in the *first category* presented an extraordinary and compelling reason warranting compassionate release.

*Mell*, 2021 U.S. Dist. LEXIS 33235, at *11 (emphasis added) (quotation marks omitted) (citing *United States v. Mangarella*, No. 06-00151, 2020 U.S. Dist. LEXIS 230495, at *7 (W.D.N.C. Dec. 7, 2020)). In conclusion, the DOJ guidance does not require the Court to find a medical condition that merely *might* increase the risk for COVID-19 to constitute an extraordinary and compelling reason.

Here, Donley suffers from a medical condition that *might* increase the risk for COVID-19, namely hypertension. *See People with Certain Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#MedicalConditionsAdults (last visited Nov. 10, 2021)). Donley also suffers from hyperlipidemia, a condition that, per the CDC, neither definitively nor potentially increases his risk for COVID-19. *Id.* Because Donley is presently a fully vaccinated 64-year-old adult, he is not an "older adult," as defined by the CDC, at an increased risk of COVID-19 related severe illness or hospitalization. *Id.* In sum, nothing in the record proves Donley has a condition that *causes* an increased risk of severe illness from COVID-19. Therefore, Donley's conditions do not constitute extraordinary and compelling reasons warranting compassionate release.

### 2. The Situation at FCI Pekin Does Not Pose a Significant Risk of COVID-19 Infection

Donley maintains the current situation at FCI Pekin poses a high risk of COVID-19 infection because the virus spreads in prison due to "a large amount of people living in close quarters" and "[t]here is no way to protect" the inmates from the guards and staff who come and go between the facility and the community. (ECF No. 2 at 4; ECF No. 6 at 18.) Donley contends "[p]risons and jails" are environments where reinfection is likely and supports his argument with the Declaration of Dr. Tara Vijayan, a specialist in infectious diseases and internal medicine, dated November 24, 2020.[4] (ECF No. 6 at 15–16.) The Government counters FCI Pekin officials demonstrated Donley receives adequate medical care at FCI Pekin because Donley was transferred to a hospital for medical treatment when he had COVID-19. (ECF No. 5 at 7.) In its supplemental opposition letter brief, filed after Donley was administered two doses of the Moderna vaccine, the Government argues Donley's natural immunity and vaccinations provide effective "self-care" against the virus. (ECF No. 11 at 1–6.)

In his supplemental reply brief, Donley argues FCI Pekin was considered a "level three" at the time of filing, which indicated an outbreak at the facility. (ECF No. 12 at 1.) At oral argument, the Government disputed the claimed "outbreak" at FCI Pekin and countered a "level three" classification can arise from several circumstances, including the level of community transmission in the county in which the facility is located and the level of vaccinations at the facility. The Government further claimed the facility's website reflected zero inmate cases and three staff cases at the time of oral argument.

---

[4] Dr. Vijayan's declaration is not specific to Donley or FCI Pekin. (ECF No. 6 at 23–31.)

11

In addition to the inmate's medical conditions, "a court may consider the conditions at the defendant's facility" "to determine whether compassionate release is appropriate amid the COVID-19 crisis." *United States v. Desciscio*, No. 88-00239, 2020 U.S. Dist. LEXIS 121335, at *16 (D.N.J. July 9, 2020) (citing *United States v. Catanzarite*, No. 18-0362, 2020 U.S. Dist. LEXIS 94478, at *13 (D.N.J. May 29, 2020)); *see also United States v. Huntington*, No. 19-133, 2020 U.S. Dist. LEXIS 242610, at *7 (D.N.J. Dec. 28, 2020) (ruling "the Court also considers the likelihood of the defendant contracting COVID-19 at the institution in which he is incarcerated" for the extraordinary and compelling reasons inquiry). "[C]ourts have denied relief to inmates with" medical conditions presenting an increased risk for severe illness or complications from COVID-19 "if BOP is meeting their medical needs and has reasonable measures in place to prevent the spread of the virus." *United States v. Adams*, No. 00-00697, 2020 U.S. Dist. LEXIS 190133, at *14 (D.N.J. Oct. 14, 2020) (citations omitted); *see also United States v. Gore*, No. 10-250, 2020 U.S. Dist. LEXIS 122109, at *12–14 (D.N.J. July 13, 2020) (finding the defendant's obesity, asthma, and other factors did not constitute "extraordinary and compelling reasons that would justify his compassionate release," when the facility was providing adequate care).

FCI Pekin is in the process of vaccinating its staff and inmate population. Of the 1,168 inmates at the facility, 850 are fully vaccinated, as are 127 staff members. *See* BOP, *COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited Nov. 10, 2021). Currently, FCI Pekin has one active inmate case and three active staff cases. *Id.* This does not suggest a significant risk of COVID-19 infection at FCI Pekin. *See United States v. Mason*, No. 17-191, 2020 U.S. Dist. LEXIS 206974, at *3 (D.N.J. Nov. 5, 2020) ("FCI Schuylkill has zero confirmed active cases of Covid-19 among inmates, but three confirmed active cases among staff at the time of this writing, suggesting the facility has been able to successfully prevent the spread of the virus among the

inmate population."); *United States v. Tatar*, No. 07-459, 2020 U.S. Dist. LEXIS 205659, at *5 (D.N.J. Nov. 2, 2020) (finding three active inmate cases at the facility, which held a total of 1,070 inmates, were insufficient to show extraordinary and compelling reasons for release); *c.f. United States v. Urzua*, No. 16-312, 2020 U.S. Dist. LEXIS 240532, at *2, n.1 (D.N.J. Dec. 22, 2020) (finding "Fort Dix was experiencing an outbreak of Covid-19 among inmates and staff" when there were "17 confirmed active cases among inmates and 18 confirmed active cases among staff"); *United States v. Graham*, No. 06-478, 2020 U.S. Dist. LEXIS 203939, at *6 (D.N.J. Nov. 2, 2020) (finding the risk of COVID-19 transmission was not insignificant and supported a finding of compelling and extraordinary reasons, when the prison facility has at least one active inmate case and 16 staff member active cases).

As for Donley's personal well-being, the Court finds Donley has received adequate medical care at FCI Pekin. He was isolated while infected with COVID-19 and was transferred to a hospital when his condition required. (ECF No. 11, Exhibit G at 10.) He has since been discharged and deemed recovered. (*Id.* at 33.) Donley has been administered two doses of the COVID-19 vaccine. (*Id.* at 43.) There is nothing in the record demonstrating he has sought additional medical treatment related to his COVID-19 infection since his discharge and inoculation. Donley has also been prescribed medications and treatments for his other medical conditions by the medical team at FCI Pekin (ECF No. 5, Exhibit D at 5–6), and he does not challenge the adequacy of this care.

In summary, Donley's medical conditions are adequately treated at FCI Pekin, and the current situation at FCI Pekin does not pose a serious risk of COVID-19 infection. Therefore, the conditions at FCI Pekin do not constitute extraordinary and compelling reasons warranting compassionate release.

### B. Section 3553(a) Factors

Even if the Court were to find extraordinary and compelling reasons were present, Donley has not demonstrated early release would be appropriate under § 3553(a). 18 U.S.C. § 3582(c)(1)(A).

The Government argues several factors weigh against early release from a life sentence: (1) the seriousness of Donley's crime and the circumstances of the "gruesome" offense—killing his wife "by repeatedly striking her in the head with a hatchet and a meat cleaver"; (2) several disciplinary violations while incarcerated, including possessing a dangerous weapon in 2004;[5] (3) the need to deter the crime of murder, protect the public from Donley, and avoid unwarranted sentence disparities. (ECF No. 5 at 8.) The Government stresses Donley was convicted of a crime requiring a mandatory minimum life sentence. (*Id.*) The Government claims it contacted the victim's parents who stated they do not want Donley to be released. (ECF No. 11 at 7.)

Donley argues several factors weigh in favor of his early release from a life sentence: (1) the seriousness of the offense cannot be the sole § 3553(a) factor considered by the Court; (2) he is considered to have a "minimum" risk of reoffending due to his prison record, criminal history, and age; (3) his prison record, criminal history, and age suggest he does not pose a danger to the public; and (4) the need to avoid sentencing disparities is not at issue in a compassionate release application arising from a global pandemic. (ECF No. 6 at 17–20.)

In his supplemental briefs, Donley argues *United States v. Bass*, No. 97-80235, 2021 U.S. Dist. LEXIS 11719 (E.D. Mich. Jan. 22, 2021) and other cases granting compassionate release

---

[5] The Government concedes most of Donley's violations are more than 18 years old. (ECF No. 5 at 8.)

from federal life-imprisonment sentences[6] demonstrate the appropriateness of a reduction of his life sentence. (ECF No. 10 at 2; ECF No. 12 at 1–2.) Donley also argues, had he been convicted before November 1, 1987, when the federal sentencing guidelines came into effect, his sentence might have been different due to the availability of parole. (ECF No. 10 at 5.) He further claims he was offered a plea agreement for which a seventeen-year sentence could have been imposed. (*Id.*) Donley concludes these allegations demonstrate a "huge disparity between Donley and other inmates across the nation serving a life sentence." (*Id.*) The Government disagrees with Donley's interpretation of *Bass* and the sentencing guidelines, and it counters an alleged pre-trial plea offer does not prove Donley was somehow less culpable than a jury later found him to be.[7] (ECF No. 11 at 6–8.)

The Court finds the factors of Donley's case weigh against early release. Donley was thirty years old at the time of the offense. He was tried and convicted of murder in the first degree for brutally murdering his wife in her bed "by repeatedly striking her in the head with a hatchet and a meat cleaver" and "cut[ing] her neck with a knife." *Donley*, 878 F.2d at 736. "The Presentence Report recommended no departure from the Sentencing Guidelines and the district court imposed a sentence of life imprisonment, which it considered to be mandatory under federal law for first degree murder." *Id.* Donley appealed his sentence, arguing a life sentence was not mandatory, but the Third Circuit determined, on plenary review, the district court correctly concluded "it had no option but to impose a sentence of life imprisonment." *Donley*, 878 F.2d at 739, 741. The Third

---

[6] In addition to *Bass*, Donley cites *United States v. Fisher*, 493 F. Supp. 3d 231 (S.D.N.Y. 2020); *United States v. Lopez*, No. 97-01117, 2020 U.S. Dist. LEXIS 200076 (D. Haw. Oct. 27, 2020); *United States v. Hope*, No. 90-06108, 2020 U.S. Dist. LEXIS 86395 (S.D. Fla. Apr. 10, 2020); and *United States v. Millan*, No. 91-685, 2020 U.S. Dist. LEXIS 59955 (S.D.N.Y. Apr. 6, 2020).

[7] The Government claims to have no access to the pre-trial plea offer given the age of the case. (ECF No. 11 at 8.)

Circuit concluded:

> Since the Sentencing Guidelines provide no possibility of parole, this may seem a harsh penalty, but that is the law as it now stands. Under the facts of this case, the recommended penalty under the Sentencing Guidelines is the same as that prescribed by the underlying statute: life imprisonment.

*Id.* at 741. In other words, Congress and the Sentencing Commission "saw fit" under both the Sentencing Guidelines and the underlying statute "to mandate that those who commit premedi[t]ated murder serve the rest of their days in prison." *United States v. Little*, No. 91-81110, 2021 U.S. Dist. LEXIS 187257, at *10 (E.D. Mich. Sep. 29, 2021). Accordingly, releasing Donley would not reflect the seriousness of his offense, promote respect for the law, provide just punishment, afford adequate deterrence, or protect the public. *Id.*

*Bass* and the other cases cited by Donley do not mandate a different conclusion. Rather, the cases Donley cites illuminate the highly fact-sensitive nature of a decision to grant or deny a sentence reduction. *See United States v. Bass*, 843 F. App'x 733, 734 (6th Cir. 2021) (finding district court erred in concluding the defendant's morbid obesity, coupled with his rehabilitation in prison, cooperation with the government, and small number of disciplinary violations, constituted an extraordinary and compelling reason supporting his release from his life sentence); *Fisher*, 493 F. Supp. 3d at 235 (granting the defendant's compassionate release application where the defendant was "in his 70s, he has experienced thickening of the lining of his lungs, has had high blood pressure and cholesterol readings, has been diagnosed with hyperlipidemia, and suffers continuing damage from a lung puncture sustained in a 1975 motorcycle accident"); *Lopez*, 2020 U.S. Dist. LEXIS 200076 at *12 (reducing the defendant's sentence because it found "extraordinary rehabilitation," and "several additional grounds that merit compassionate release" including the defendant's "youth at the time of his offense," lack of a prior criminal record, a

minimal disciplinary record, "his charity work, his informal support for other inmates, his services in helping at-risk youth, that he does not represent a danger to society, and the ongoing COVID-19 pandemic"); *Hope*, 2020 U.S. Dist. LEXIS 86395, at *11 (reducing the defendant's life sentence due to sentencing disparities occasioned by promulgation of the First Step Act); *Millan*, 2020 U.S. Dist. LEXIS 59955, at *48 (reducing the defendant's sentence due to his "extraordinary rehabilitation," remorse and contrition, conduct as model prisoner and man of extraordinary character, leadership in the religious community, dedication to work with at-risk youth and suicide prevention, and the support of BOP staff at the facility).

Here, the applicable sentencing factors under 18 U.S.C. § 3553(a) do not indicate granting Donley's motion for compassionate release, thereby reducing his sentence, would be appropriate. As the result, the Court denies Donley's motion for compassionate release.

### IV. CONCLUSION

For the reasons set forth above, Donley's motion for compassionate release is **DENIED**. An appropriate order follows.

**Date: December 30, 2021**                              */s/ Brian R. Martinotti*
                                                                                                  **HON. BRIAN R. MARTINOTTI**
                                                                                                   UNITED STATES DISTRICT JUDGE